BARTLETT PALMER, In Equity

*vs.*

FRANCIS PALMER, et al.

York.    Opinion July 13, 1914.

*Assignee.    Assignment of Part of Fund.    Creditors.    Equity.    Order.    Residue.*
*Testamentary Trustee.    Trust.*

The question presented is whether the plaintiff, as holder of the order, and there-
fore as assignee of part of this particular fund, can recover in equity from the
trustee of the fund, who was duly notified of the order and who, at the time
of the notice, had ample funds in his hands to meet it, but refused to accept
or pay it, and who has since paid to subsequent creditors of assignor all of
said fund.

*Held:*

1.    It is familiar law that an entire demand or chose in action may be assigned,
that the assignment is binding upon the debtor after notice, whether he accepts
it or not, and that the assignee may enforce his rights in an action at law against
the debtor, upon the acceptance, if accepted; otherwise, upon the original
claim itself.

2.    The assignment of a part only of an entire demand or chose in action, though
invalid in law, except as between the parties, is valid in equity and binding
upon the debtor, whether accepted and assented to by him or not, and may be
enforced in equity against the debtor.

3.    The law permits the transfer of an entire cause of action from one person to
another, because in such case the only inconvenience is the substitution of one
creditor for another, but if assigned in fragments, the debtor has to deal with
a plurality of creditors.    A partial assignment would impose upon him burdens
which his contract does not compel him to bear.

On report.    Bill sustained.    Decree in accordance with opinion.

This is a bill in equity inserted in a writ of attachment to recover
from Francis Palmer, drawee in an order given Bartlett Palmer by
Clinton C. Palmer on Francis Palmer, Trustee under the will of
Elizabeth C. Palmer, deceased, the sum of eight hundred dollars and
interest from April 19, 1910.    The defendant Francis Palmer filed an
answer to said bill and the plaintiff filed a replication.    At the con-
clusion of the evidence, the cause was reported to the Law Court

upon bill, answer, replication and so much of the testimony as is legally admissible, the Law Court to render such judgment as the rights of the parties require.

The case is stated in the opinion.

*Clinton C. Palmer*, for plaintiff.

*James O. Bradbury, Cleaves, Waterhouse & Emery,* for defendant.

SITTING: SAVAGE, C. J., SPEAR, CORNISH, KING, BIRD, HANSON, JJ.

CORNISH, J. Bill in equity to recover from a drawee the sum of $800 with interest, the amount of an order dated April 16, 1910. Prior cases before this Court arising out of the same estate have fully set forth the preliminary facts and it is unnecessary to repeat them in detail. It is sufficient to say that one of the defendants, Clinton C. Palmer, has been held to possess an equitable estate in fee in a certain portion of the residuary estate of his mother, Elizabeth C. Palmer, which was held in trust for him by Francis Palmer the other and real defendant, "to be used for his comfort and necessities according to the direction" of said trustee. *Holcomb* v. *Palmer*, 106 Maine, 17, the opinion in that case being rendered on September 8, 1909.

Clinton C. Palmer had previously given to George F. Haley two promissory notes of $500 each, for money loaned, one in November, 1908, and the other in March, 1909. An equitable trustee process was brought on these notes against Clinton C. Palmer the maker and Francis Palmer the testamentary trustee, under R. S., Chap. 79, Sec. 6, Par. IX, and was sustained, the decree of the single Justice being entered on March 24, 1910, and, on appeal, was affirmed by the Law Court on November 9, 1910. *Haley* v. *Palmer*, 107 Maine, 311.

On April 16, 1910, Clinton C. Palmer gave his brother, Bartlett Palmer, the plaintiff, the following order,

"Philadelphia, Pa., April 16, 1910.

$800.

Pay to Bartlett Palmer, for value received, eight hundred and no / 100 dollars out of the fund constituting the trust established by the residuary clause of the will of Elizabeth C. Palmer, deceased, and charge the same to the account of Clinton C. Palmer.

To Francis Palmer, trustee under the will of Elizabeth C. Palmer, deceased.

Trenton, New Jersey.        Clinton C. Palmer."

This order was presented to Francis Palmer for payment at Trenton on April 19, 1910, but payment was refused by him the reason assigned being, as appears by the indorsement, "Funds are under the control of the Courts." This order is the basis of the present bill in equity.

On November 15, 1910, Clinton C. Palmer gave to Fred A. Tarbox as collateral for a promissory note, an assignment of all his residuary interest in his mother's estate, subject to the lien established by the decree in the Haley case. The defendant, Francis Palmer, refused to honor the assignment or to make the payment, and therefore another equitable trustee process was instituted by the assignee and was sustained, the opinion of the Law Court being rendered on May 17, 1913. *Tarbox* v. *Palmer*, 110 Maine, 436. The amount remaining in the hands of Francis was insufficient to pay the Tarbox claim in full so that when the present bill was brought on June 11, 1913, the trust estate had become exhausted.

The precise question presented therefore is whether the plaintiff as holder of the order and therefore as assignee of part of this particular fund can recover in equity from the trustee of the fund, who was duly notified of the order but refused to accept or pay it, who at the time of notice had ample funds in his hands with which to meet it, but has since paid the same to a subsequent creditor of the assignor under a decree of Court. This case is of somewhat novel impression as the controversy has usually arisen between attaching creditors and the equitable assignee, where the debtor or drawee assumed the position of stakeholder and stood ready to pay to which-ever party might be declared by the Court entitled to the funds, as in *Exchange Bank* v. *McLoon*, 73 Maine, 498, and *Harlow* v. *Bangor*, 96 Maine, 294, trustee actions at law, and in *Kingsbury* v. *Burrill*, 151 Mass., 199, a bill in equity in the nature of interpleader.

In such cases the debtor stands indifferent. Here however the debtor is a contending party as he has paid the funds to the assignor's creditors, regardless of the previous partial assignment to the plaintiff, so that the issue here is between the assignee and the debtor and depends upon the force and effect of the assignment itself, after notice to the debtor. Is the debtor still liable to the assignee notwithstanding the payment he has made?

This question must be answered in the affirmative.

It is familiar law that an entire demand or chose in action may be assigned, that the assignment is binding upon the debtor after notice, whether he accepts it or not, and that the assignee may enforce his rights in an action at law against the debtor, upon the acceptance if accepted, otherwise upon the original claim itself. In like manner the assignment of a part only of an entire demand or chose in action though invalid in law, except as between the parties, is valid in equity and binding upon the debtor whether accepted and assented to by him or not, and may be enforced in equity against the debtor. This distinction and the reason for its existence are clearly set forth in the leading case of *Exchange Bank* v. *McLoon,* 73 Maine, 498, as follows: ''The law permits the transfer of an entire cause of action from one person to another, because in such case the only inconvenience is the substitution of one creditor for another. But if assigned in fragments, the debtor has to deal with a plurality of creditors. If his liability can be legally divided at all without his consent, it can be divided and subdivided indefinitely. He would have the risk of ascertaining the relative shares and rights of the substituted creditors. He would have instead of a single contract a number of contracts to perform. A partial assignment would impose upon him burdens which his contract does not compel him to bear. . . . . . In a court of equity, however, the objections to a partial assignment of a demand which are formidable in a court of law disappear. In equity the interests of all parties can be determined in a single suit. The debtor can bring the entire fund into court and run no risks as to its proper distribution. . . . . . In many ways a court of equity can, while a court of law, with its present modes, cannot, protect the rights and interests of all parties concerned." In other words the assignee of a part of a particular fund has the same rights in equity that the assignee of an entire demand has in law. His remedy in equity arises when notice of the assignment is given to the debtor and does not depend upon acceptance by the debtor. The fund is from that time forward impressed with a trust; it is, as it were, impounded in the debtor's hands, and must be held by him not for the original creditor, the assignor, but for the substituted creditor, the assignee. Mr. Pomeroy states the rule thus: ''In order that the doctrine may apply, and that there may be an equitable assignment creating an equitable property, there must be a specific fund, sum of

money or debt actually existing or to become so in future upon which the assignment may operate, and the agreement, directions for payment, or order must be in effect an assignment of that fund or of some definite portion of it. . . . . . The agreement, direction or order being treated in equity as an assignment, it is not necessary that the entire fund or debt should be assigned; the same doctrine applies to an equitable assignment of any definite part of a particular fund. The doctrine that the equitable assignee obtains not simply a right of action against the depositary, mandatary or debtor but an equitable property in the fund itself, is carried out into all its legitimate consequences. . . . . . The fund in this respect resembles a fund impressed with a trust." 3 Pomeroy Eq. Jur. Sec. 1280.

In *Bank of Harlem* v. *Bayonne*, 48 N. J. Eq. 246, 21 At. 478, the Court on this point say:

"It is evident from this statement of the incidents of an equitable assignment that acceptance by the debtor of the order or assignment is not, in equity, necessary to its validity as a transfer pro tanto of a fund in his hands. It takes effect from the acts of the assignor and assignee, and the debtor, so far as the right to the fund is concerned, is but the instrument through whom the transfer is to be actually made. The debtor's acceptance or promise gives the assignee an action at law against him, not on the assignment, but on the promise; it neither creates, increases nor diminishes his liability to the assignee." See also the same principles accepted in *Lazarus* v. *Swan*, 147 Mass., 330; *Warren* v. *Bank of Columbus*, 149 Ill., 9, 25 L. R. A., 746; *Todd* v. *Meding*, 56 N. J. E., 83, 38 At. 349: *Merchants & Miners Nat. Bank* v. *Barney*, 18 Mont., 335, 47 L. R. A., 737.

It is clear then on this first proposition that the plaintiff's order not only gave him the right of property in the amount assigned, but also that on demand it became the duty of Francis Palmer, the drawee, to pay the sum so assigned, and on his refusal this bill in equity would lie. It therefore follows that after notice of the assignment the debtor cannot lawfully pay the amount assigned either to the assignor or to his attaching creditors, and if he does make such payment it is at his peril. The payment of the Haley judgment in no way affects the rights of the parties here because final decree was entered by the single

Justice in that proceeding nearly a month before the plaintiff's order was given and therefore clearly had the priority. But the assignment to Tarbox was not given until seven months after the plaintiff's order, and the equitable proceedings in that case were not concluded until the final decree was affirmed by the Law Court on May 17, 1913. When the bill in equity in that case was served upon the defendant, Francis Palmer, in which Tarbox claimed the entire balance of the trust fund, less the Haley judgment, it was the plain duty of Francis in his answer to set up this prior assignment to Bartlett Palmer, and to ask the Court to pass upon both claims and determine their validity and priority. This he neglected to do. He revealed the true situation neither in his answer nor by evidence. Had the Court been apprised of the facts the plaintiff could have been made a party and his rights determined in that proceeding. Not having done this, which it was his duty to do, the trustee paid the Tarbox claim at his peril. He was knowingly using the property of the plaintiff to pay the debt of another and the mere fact of having thus expended all the fund affords no defense to the claim of the rightful owner. Here again the rights of the parties to an assignment of an entire claim are analogous. Payment under trustee process at law will not protect a debtor who had notice of a prior assignment and neglected to set up the assignment in his disclosure. *Brill* v. *Tuttle*, 81 N. Y., 454, 37 Am. Rep., 515; *Milliken* v. *Loring*, 37 Maine, 408; *Bunker* v. *Gilmore*, 40 Maine, 88; *Larrabee* v. *Knight*, 69 Maine, 320; and notice even after attachment but before disclosure is seasonable. *Horne* v. *Stevens*, 79 Maine, 262. For the same reason payment under an equitable trustee process cannot protect a debtor who had notice of a prior assignment and neglected to set it up in his answer or to show it in evidence. That is the situation in which the defendant, Francis Palmer, is now placed, and his liability therefore is established.

But even conceding the original liability of Francis Palmer on the equitable assignment, his learned counsel raises two other objections to the maintenance of his bill.

First because the plaintiff has failed to show the relation of debtor and creditor between the assignor and assignee. This claim however rests upon suspicion rather than proof. As was said in *Dix* v. *Cobb*, 4 Mass., 508, "The assignment in this case may be fraudulent, but on its face it appears to be regular and for a valuable consideration;

and we cannot presume fraud." *Robbins* v. *Bacon,* 3 Maine, 346. The plaintiff's order was expressed to be for value received and that is sufficient prima facie evidence of consideration. The defendant offered no evidence to overcome this and therefore the consideration remains unshaken, so far as proof is concerned. *Tarbox* v. *Palmer,* 110 Maine, 436-441.

In the second place the defendant, Francis, sets up estoppel and laches, but we fail to find in the record sufficient proof to warrant the application of either of these equitable defenses.

As concerns estoppel, the plaintiff did nothing and said nothing which in any way misled the drawee or caused him to change his position. Nor did he keep silent when he should have spoken. He notified the drawee of the order immediately after it was made and after payment was refused they had no further dealings. The plaintiff resided in Philadelphia, Francis in Trenton, New Jersey, and they did not meet. Francis acted entirely on his own motion in the Tarbox suit and was not placed in his present position by any conduct on the part of the plaintiff. The elements of estoppel are lacking. *City Bank of New York* v. *Wilson,* 193 Mass., 161-6.

The plaintiff was not obliged to repeat his notice, nor to watch court proceedings in Maine in order to ascertain if other parties subsequently claimed his property. It was the duty of the drawee to disclose the assignment, not of the assignee to take precautions to intervene in a proceeding which never came to his knowledge so far as appears from the evidence. It is true that the original assignor, who is now counsel for the assignee in this proceeding as well as a nominal party defendant, was cognizant of all the proceedings in the Tarbox case and took part therein, but there is no evidence that he was acting for the plaintiff at that time nor that he informed him in regard to the matter. And even if he had it might well be questioned whether such knowledge of itself would relieve the drawee of the duty which rested upon him in order to protect himself from the legal consequences of the assignment of which he had been given due and prompt notice.

Nor can the plaintiff be held to lose his property because of laches. When he gave notice to the drawee in April, 1910, his request was refused and the reason assigned was that the funds were "under the control of the courts." He refrained from enforcing his claim for a little over three years but we cannot hold that his rights are thereby

precluded. ʹBy the plaintiff's delay the defendant has lost no evidence necessary to a fair presentation of the case on his part and has been deprived of no just advantage and subjected to no hardship, tests which are always applied. *Spaulding* v. *Farwell*, 70 Maine, 17. The hardship which exists arises not from the fault of the plaintiff, but from the unfortunate inadvertence or neglect of the defendant himself, and for this the plaintiff should not be made to suffer.

*Bill sustained with costs.*
*Decree in accordance with opinion.*